IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE E. SCOTT  #165244         :

      Plaintiff,                  :

vs.                            :          CIVIL ACTION 09-00504-KD-C

TONY PATTERSON, et al.,        :

      Defendants.           :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a

Complaint under 42 U.S.C. § 1983.   This action was referred to the undersigned pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the

motions for summary judgment of Defendants, Warden Tony Patterson, Lieutenant Michael

Banks, Sergeant Walter Richardson, and Nurse Sonya Gohagin (Docs. 12, 13, 20, and 21);

Plaintiff's opposition thereto (Doc. 16); and Plaintiff's motion for summary judgment (Doc. 23).

For the reasons stated below, it is recommended that the motions for summary judgment of

Defendants Patterson, Banks, Richardson, and Gohagin be granted, that Plaintiff's motion for

summary judgment be denied, and that Plaintiff's action against these Defendants be dismissed

with prejudice.

I.   SUMMARY OF FACTUAL ALLEGATIONS

1. From its review of the record, the Court summarizes the parties' allegations that are

material to the issues addressed in this Report and Recommendation.

2. At the time of the incident made the basis of this litigation, Plaintiff was an inmate

incarcerated at the Atmore Community Work Center ("Work Center") in Atmore, Alabama.

(Doc. 1 at 4, Complaint).

3. Plaintiff claims that, on July 15, 2009, at approximately 1:45 p.m., he was bitten by a snake on his lower right leg while performing trash duty on the "Baldwin D Squad." (Id. at 4-5, 11-12). According to Plaintiff, he reported the bite to his squad supervisor, Martin Crenshaw, who reported it to Defendants Lieutenant Banks and Sergeant Richardson. (Id. at 12-13). Plaintiff alleges that Defendants Banks and Richard refused his request to go to the hospital. (Id. at 13).

4. Plaintiff claims that, the following day, July 16, 2009, his leg was swelling and had "started to rot," and a nurse at the Work Center examined the affected area and administered "a bandage and cream." (Id. at 13-14).

5. Six days after the bite incident, at approximately 6:30 a.m. on July 21, 2009,[1] Plaintiff showed his leg to Sergeant Sharon Taylor, who was assigned to the Work Center, and told her that "something" had bitten him while he was working on Baldwin D Squad. (Doc. 21, att. 1 at 2). Sergeant Taylor spoke with LPN Jennifer Covan about examining Plaintiff, and Nurse Covan advised Sergeant Taylor that Plaintiff needed to be seen by the Fountain Correctional Center ("Fountain") health care unit. (Id.).

6. At approximately 7:30 a.m. on July 21, 2009, Plaintiff was transported to the health care unit at Fountain. (Id.).

7. At approximately 8:30 a.m. on July 21, 2009, Sergeant Taylor informed Warden Tony Patterson of the incident and also spoke with Plaintiff's squad supervisor, Martin Crenshaw.

---

1 In Taylor's affidavit dated November 8, 2010, she testified that the date listed in the incident report was incorrect and that Plaintiff had reported the bite to her around 6:30 a.m. on July 21, 2009, not on July 22, 2009, as the report indicates. (Doc. 21, att. 2 at 2, Taylor Affidavit).

(Doc. 21, att. 1 at 2).

8. At approximately 9:40 a.m. on July 21, 2009, Plaintiff was treated at the Fountain health care unit for an "insect" or "small snake bite." (Doc. 13, att. 2 at 3, Medical Records). Plaintiff's Progress Notes indicate that he complained of a bite to his lower right leg but "doesn't know what bit him." (Id.). The records further indicate that Plaintiff stated that he was "'stung' on his right lower leg by something" and that "it felt like a wasp." (Id.).

9. The health care unit nurse described the wound as an "8 cm by 4 cm oval patch of black hard skin. No puncture marks found." (Id. at 3-7). The nurse numbed the area, debrided the superficial tissue, dressed the wound, and placed Plaintiff on the ward for twenty-four hours for close observation. (Id.).

10. On July 21, 2009,[2] and July 22, 2009, the Fountain health care unit medical staff monitored Plaintiff and gave him pain medicine as needed. (Id. at 4-7). At approximately 10:00 a.m. on July 22, 2009, Plaintiff was seen by a doctor and prescribed an antibiotic and pain medication. Plaintiff was discharged at approximately 12:20 p.m. on July 22, 2009, with a medical work restriction for a period of thirty days, a bottom bunk profile, and instructions from the doctor not to stand for more than thirty minutes. (Id. at 7-9).

11. On July 29, 2009, Plaintiff was seen for a follow up examination and treated for an infection in his right leg, accompanied by "mild swelling." (Id. at 10-11). The nurse debrided a "6 x 10 cm" area, dressed the wound, and ordered a daily dressing change for one week. (Id.).

12. On July 31, 2009, Plaintiff failed to show up for his follow up appointment. (Id. at

---

2 Plaintiff does not allege deliberate indifference by Defendants with regard to any medical treatment that he received after July 21, 2009. Plaintiff complains only that Defendants should not have waited six days after he was bitten to have his leg treated by the medical staff at the

11). Plaintiff's medical records contain the notation: "[s]tated wanted to take shower first and never returned." (Id.). Plaintiff received dressing changes on August, 1, 2, and 4, 2009. (Doc. 13, att. 1 at 2, Gohagin affidavit).

13. By August 26, 2009, Plaintiff's medical records reflect that the bite wound was "healed" and "repigmenting." (Doc. 13, att. 2 at 12).

14. On September 16, 2009, Plaintiff requested medical treatment, stating that he had a "bad cold" and that his "leg [wa]s itching very bad." (Doc. 13, att. 8 at 13, Medical Records). The following day he was prescribed several medications, including a hydrocortisone cream, antibiotic, and cold medicine. (Doc. 13, att. 11 at 3, Medical Records).

15. Plaintiff's medical records from September, 2009, to August 25, 2010, reflect a series of medical complaints including itching, colds, cough, swollen right knee,[3] and back problems, which were promptly treated with medications, including hydrocortisone cream, antibiotics, and cold medicines. In addition, the prison medical staff prescribed knee and back braces, x-rayed Plaintiff's right knee, and drew fluid from his knee. (Doc. 13, att. 2 at 13-20; att. 4 at 3-7; att. 6 at 16-17; att. 7 at 13-19; att. 8 at 8-13; att. 10 at 15-20; att. 11 at 3; att. 12 at 15-16).

## II. PROCEDURAL ASPECTS OF THE CASE

1. On August 6, 2009, Plaintiff filed the present § 1983 Complaint in this Court, seeking compensatory and punitive damages, as well as injunctive relief, against Defendants Warden Tony Patterson, Lieutenant Michael Banks, Sergeant Walter Richardson, and Nurse Sonya

---

health care unit at Fountain.

[3] It is unclear from Plaintiff's medical records whether the swelling in his right knee was related to the snake bite. As previously noted, however, Plaintiff does not allege deliberate indifference by Defendants with regard to any medical condition or treatment after July 21, 2009.

Gohagin[4] for delay in providing medical treatment for a snake bite that Plaintiff received on July 15, 2009, thereby violating his Eighth Amendment right against cruel and unusual punishment. (Doc. 1 at 10-18).

2. On September 10, 2010, and November 8, 2010, Defendants filed their Special Reports and Answers, denying any violation of Plaintiff's constitutional rights and asserting various defenses, including qualified and absolute immunity.[5]   (Docs. 12, 13, 20, 21).

---

[4] It appears from the Complaint that Plaintiff intended to sue Nurse Shawn Geohagan, not Nurse Sonya Gohagin, who answered the Complaint.   (Doc. 1 at 8).   Both of these nurses provided medical treatment to Plaintiff for his snake bite injury.   (Doc. 13, att. 2 at 3-6; Doc. 13, att. 1 at 2).   In any event, having found herein that Plaintiff has failed establish a constitutional violation for denial of adequate medical care, his Eighth Amendment claim against either nurse is due to be dismissed.

[5] Plaintiff does not specify whether he is suing Defendants in their official or individual capacities or both.   Thus, the Court will consider both.

As state officers, Defendants Warden Tony Patterson, Lieutenant Michael Banks, and Sergeant Walter Richardson, are absolutely immune from suit for damages in their official capacities.   See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).   In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).   Prior to the Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. 223, 129 S. Ct. at 818, which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct.   While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case.   Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."   Saucier, 533 U.S. at 201.

The Court also notes that, as a private actor, Defendant, Nurse Gohagin, is not entitled to immunity, whether qualified or absolute.   See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the County to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000)

3. The Court converted Defendants' Special Reports and Answers to motions for summary judgment on September 20, 2010, and November 12, 2010.   (Docs. 15, 22).

4. On October 1, 2010, Plaintiff filed an opposition to Defendants' motions for summary judgment, and, on December 13, 2010, Plaintiff filed a motion for summary judgment.   (Docs. 16, 23).

5. These motions and responses are now before the Court.

## III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.   The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

3. All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.   Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

4. However, Rule 56(e) states that:

When a motion for summary judgment is properly made

---

(a "privately employed prison physician" "is ineligible to advance the defense of qualified immunity"); Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a private entity contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity...."). Similarly, with respect to absolute immunity, the Court is aware of no case extending absolute immunity to a privately employed nurse providing medical services to state inmates.

and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

5. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

6. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. DISCUSSION

1. As set forth above, Plaintiff alleges in his Complaint that Defendants violated his rights under the Eighth Amendment by delaying medical treatment for a snake bite that occurred while he was incarcerated at the Atmore Community Work Center in Atmore, Alabama. (Doc. 1 at 4-16). Specifically, Plaintiff alleges that he was bitten by a snake on July 15, 2009, while performing trash duty as part of the "Baldwin D Work Squad," but was not treated until six days later, on July 21, 2009. (Id. at 12-14). Plaintiff claims that the six-day delay in medical treatment constitutes a violation of his rights under the Eighth Amendment.

2. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend.

VIII.

3. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits

prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."

Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97,

104 (1976)).

4. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the

objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an
> objective component, which inquires whether the alleged
> wrongdoing was objectively harmful enough to establish a
> constitutional violation, and a subjective component, which
> inquires whether the officials acted with a sufficiently culpable
> state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

5. To meet the objective element required to demonstrate a denial of medical care in

violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an

"objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

6. A serious medical need is "'one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187

(11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left

unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and

citation omitted).

7. In order to meet the subjective requirement of an Eighth Amendment denial of medical

care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need.

Farrow, 320 F.3d at 1243.

8. "Deliberate indifference" entails more than mere negligence.   Estelle, 429 U.S. at 106;

Farmer v. Brennan, 511 U.S. 825, 835 (1994).

9.      The Supreme Court clarified the "deliberate indifference" standard
        in Farmer by holding that a prison official cannot be found
        deliberately indifferent under the Eighth Amendment "unless the
        official *knows of* and *disregards an excessive risk to inmate health
        or safety;* the official must both be aware of facts from which the
        inference could be drawn that a substantial risk of serious harm
        exists, and he must also draw the inference."   Farmer, 511 U.S. at
        837, 114 S. Ct. 1970 (emphasis added).   In interpreting Farmer
        and Estelle, this Court explained in McElligott that "deliberate
        indifference has three components: (1) subjective knowledge of a
        risk of serious harm; (2) disregard of that risk; (3) by conduct that
        is more than mere negligence."   McElligott, 182 F.3d at 1255;
        Taylor, 221 F.3d at 1258 (stating that defendant must have
        subjective awareness of an "objectively serious need" and that his
        response must constitute "an objectively insufficient response to
        that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

10. "Delay in access to medical attention can violate the Eighth Amendment . . . when it

is tantamount to unnecessary and wanton infliction of pain."   Hill, 40 F.3d at 1187 (internal

citations and quotation marks omitted).   "Cases stating a constitutional claim for immediate or

emergency medical attention have concerned medical needs that are obvious even to a layperson

because they involve life-threatening conditions or situations where it is apparent that delay

would detrimentally exacerbate the medical problem."   Id.

11.     The "seriousness" of an inmate's medical needs also may be
        decided by reference to the *effect* of delay in treatment.
        Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347.
        Where the delay results in an inmate's suffering "a life-long
        handicap or permanent loss, the medical need is considered

serious." Id. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Hill, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

12. The Court assumes, for purposes of the parties' motions for summary judgment, that Plaintiff's snake bite[6] wound constitutes an objectively serious medical injury. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

13. Plaintiff asserts that, although he was bitten on July 15, 2009, he was not treated until six days later, on July 21, 2009, which, he claims, constitutes deliberate indifference by Defendants to his serious medical need. The Court disagrees.

14. Assuming Plaintiff's allegations as true, on the day of the incident, July 15, 2009, he reported the bite to his squad supervisor, Martin Crenshaw, who reported it that same day to Defendants Lieutenant Banks and Sergeant Richardson. (Doc. 1 at 12-13). However, according to Plaintiff, his request to go to the hospital was refused. (Id.).

15. Plaintiff further alleges that, on the following day, July 16, 2009, he was suffering from "a great amount of snake poison and swelling in his right leg" and that his leg "had

---

6 The Court notes that, on July 21, 2009, Plaintiff reported to the nurse at Fountain that he did not know what bit him, that he had been "stung" on his right lower leg by something, and that "it felt like a wasp." (Doc. 13, att. 2 at 3, Medical Records). Even so, for purposes of the parties' motions for summary judgment, the Court assumes that Plaintiff was bitten by a snake.

darken[ed] and started to rot." (Doc. 1 at 13-14). Plaintiff claims that a nurse at the Work Center examined the wound and administered only "a bandage and cream." (Id.).

16. According to Plaintiff, he then showed his leg to Sergeant Taylor on July 21, 2009, and she immediately ordered that he be transported to the prison health care unit at Fountain where he was treated by a doctor. (Id. at 14).

17. While Plaintiff does not dispute that the nurse at the Work Center examined the bite wound on July 16, 2009, the day following the incident, and applied a cream medication and bandage, he complains that the six-day delay in having him examined by the medical staff at Fountain constitutes deliberate indifference to his serious medical need. (Doc. 1 at 14-15).

18. To the contrary, however, the mere fact that six days passed between the time that Plaintiff was bitten and the time that he was treated by the medical staff at Fountain does not establish a constitutional violation. As discussed above, in order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Plaintiff's health. Farrow, 320 F.3d at 1245-46.

19. Although Plaintiff claims that his leg was swollen and "rot[ting]" on July 16, 2009, the day after he was bitten (Doc. 1 at 13), his medical records show that, on that very date, Plaintiff filled out a medical services request form asking for a back brace to replace the one that he had lost, and he never mentioned the snake bite or the need for medical treatment for his leg. (Doc. 13, att. 8 at 17).

20. Moreover, on July 19, 2009, four days after the snake bite incident, Plaintiff signed a medical release form refusing a medical appointment that had been scheduled for July 21, 2009, for an EKG, stating that he did not want to miss work. (Doc. 13, att. 2 at 1). There is no mention of the snake bite or Plaintiff's leg.

21. This evidence belies Plaintiff's assertion that, on July 16, 2009, the day following the incident, his medical condition had reached a point of deterioration so severe that Defendants knew that the bite wound posed an excessive risk to his health, and they simply ignored it.

22. Indeed, contrary to Plaintiff's assertions of deliberate indifference, there is no evidence that Defendants knew that Plaintiff had been bitten by a snake, as opposed to an insect; there is no evidence that Plaintiff's injury was life-threatening; there is no evidence indicating that it was apparent to Defendants that a six-day delay in further medical treatment would detrimentally exacerbate Plaintiff's condition; and there is no "verifying medical evidence" that the six-day delay in providing further medical treatment did in fact detrimentally exacerbate Plaintiff's condition.   Hill, 40 F.3d at 1188-89.

23. The undisputed evidence shows that Plaintiff received medical care from the nurse at the Work Center the day after he was bitten, and that he received additional, extensive medical treatment from the Fountain health care unit six days after he was bitten.

24. Plaintiff did not seek medical attention for the snake bite wound in the days immediately following the incident, but, rather, sought medical treatment for his back and declined a previously scheduled EKG without ever mentioning his snake bite wound. When Plaintiff finally complained to Sergeant Taylor about his leg six days after the incident, she immediately had him transported to Fountain where he was given extensive medical treatment for the bite wound and where he has continued to receive follow up care for this and other ailments.

25. "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."   Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).

26. Considering all of the circumstances surrounding the treatment that Plaintiff received

related to his snake bite injury on July 15, 2009, including the six-day delay in providing further treatment of the bite wound by the medical staff at Fountain, the Court cannot say that any of the Defendants were deliberately indifferent to Plaintiff's injury.   Thus, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim, and Defendants are entitled to summary judgment.

## V.   CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants, Warden Tony Patterson, Lieutenant Michael Banks, Sergeant Walter Richardson, and Nurse Sonya Gohagin (Docs. 12, 13, 20, and 21) be granted, that Plaintiff's motion for summary judgment (Doc. 23) be denied, and that Plaintiff's action against these Defendants be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 25th day of January, 2011.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      ***Objection***.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to   do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.   Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[15] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   <u>Fed. R. Civ. P.</u> 72(b)(2).